No. 17-1552

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

*Mercy Dews, et al.*

Appellants

*v.*

*The United States of America*

Appellee
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
_____

Opening Brief of Appellants
_____

E. DALE ADKINS III
EMILY C. MALARKEY
BEKMAN, MARDER & ADKINS, LLC
300 West Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633
*Attorneys for Appellants*

# TABLE OF CONTENTS

Table of Authorities ................................................................ iv

Jurisdictional Statement ............................................................ 1

Issues Presented For Review ...................................................... 2

Statement of the Case ................................................................ 3

Statement of the Facts .............................................................. 4

Summary of the Argument ......................................................... 9

Argument ................................................................................. 11

    I.    LEGAL BACKGROUND ...................................................... 11

        A.    Prosecution of FTCA Claims .................................. 11

        B.    FTCA Malpractice Cases Arising in Maryland ..13

    II.    *RAPLEE* WAS WRONGLY DECIDED AND IS BAD LAW ............ 15

        A.    The *Raplee* Panel Disregarded The Principle That The Federal Government Is Liable In The Same Manner And To The Same Extent As Private Individuals When It Failed To Recognize That, Under Maryland Law, Filing In HCADRO Constitutes "Filing An Action" In A Malpractice Case ........................................................ 17

        B.    Although Recognizing That Its Holding Was Practically Unfeasible, The Panel Established An Untenable "Solution" To This Problem That Violates Maryland Law And Requires Premature, Defective Federal Lawsuits ............ 23

C.    The Panel Altered The Plain Language Of §
2401(b) And Did Not Explain Why Filing In
HCADRO Is Not Beginning Action Under The
FTCA When It Expressly Is Under Maryland
Law .................................................................27

III.    EQUITABLE TOLLING APPLIES TO J. DEWS' FTCA CLAIM...30

A.    Equitable Tolling Is Available Under The
FTCA ..............................................................32

B.    In Light Of Wong, Tolling For Minors And
Mentally Disabled Plaintiffs – Which Is Part Of
The Substantive Law Of Maryland Guaranteed
Under Its Constitution – Must Be Recognized In
FTCA Cases ...................................................33

C.    Appellants Pursued Their Rights Diligently ......40

Conclusion .................................................................42

Request for Oral Argument .........................................43

Certificate of Compliance ...........................................44

Certificate of Service ..................................................45

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Albright v. Keystone Rural Health Center,* 320 F. Supp. 2d 286 (M.D. Pa. 2004)...........................................................................................37-38

*Anderson v. U.S.,* No. CCB-08-3, 2008 WL 3307137 (D. Md. Aug. 8, 2008)...............................................................................................14, 26

*Anderson v. U.S.,* 669 F.3d 161 (4th Cir. 2011) ......................................34

*Anderson v. U.S.,* 46 A.3d 426 (Md. 2012) ..............................................35

*Carroll v. Konits,* 929 A.2d 19 (Md. 2007) .................................13, 25, 29

*Crawford v. Leahy,* 604 A.2d 73 (Md. 1992) ...........................................25

*Davidson v. Sinai Hosp.,* 617 F.2d 361 (4th Cir. 1980) ..........................14

*Goodie v. U.S.*, No. RDB-10-3478, 2013 WL 968198 (D. Md. Mar. 12, 2013)........................................................................................21, 22, 26

*Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 111 S. Ct. 453 (1990) ...40

*Landreth by and through Ore v. U.S.,* 850 F.2d 532 (9th Cir. 1988)......32

*Lopez v. U.S.,* 758 F.2d 806 (1st Cir. 1985) ............................................18

*Lucas v. U.S.,* No. 16-1539, 2016 WL 6871912 (4th Cir. Nov. 22, 2016)....................................................................................................16

*Marricone v. United States,* 697 F. Supp. 874 (E.D. Pa. 1988)..............18

*McAllister v. U.S.,* 925 F.2d 841 (5th Cir. 1991) ....................................12

*McCall ex rel. Estate of Bess v. U.S.,* 310 F.3d 984 (7th Cir. 2002)........32

*Munger v. United States,* 116 F. Supp. 2d 672 (D. Md. 2000) ...............18

*Parker v. Hamilton,* -- A.3d --, No. 78, Sept. Term 2016, 2017 WL 2226686 (May 22, 2017) ..........................................................................36

*Parker v. U.S.*, 935 F.2d 176 (9th Cir. 1991) ..........................................12

*Piselli v. 75th Street Medical,* 808 A.2d 508 (Md. 2002)....................35, 36

*Raplee v. U.S.,* 842 F.3d 328 (4th Cir. 2016) ................................. *passim*

*Richards v. U.S.,* 369 U.S. 1, 82 S.Ct. 585 (1962).............................12, 17

*Rowland v. Patterson,* 882 F.2d 97 (4th Cir. 1989) ...................15, 18, 20

*Santos ex rel Beato v. U.S.,* 559 F.3d 189 (3d Cir. 2009) ...........38, 39, 40

*Simon v. U.S.,* 244 F.2d 703 (5th Cir. 1957) ...........................................32

*Swam v. Upper Chesapeake Med. Ctr.,* 919 A.2d 33 (Md. 2007) ............14

*United States v. Wong,* 135 S. Ct. 1625 (2015) ......................10, 19, 31-33

*Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct 1978 ...................15

*Wilson v. Gottlieb,* 821 F. Supp. 2d 778 (D. Md. 2011) ..........................30

*Zander v. U.S.,* 843 F. Supp. 2d 598 (D. Md. 2011).........................14, 26

## **Statutes and Rules**

28 U.S.C. § 1346................................................................................11

28 U.S.C. § 1446................................................................................30

28 U.S.C. § 2401(b) ....................................................................... *passim*

28 U.S.C. § 2674................................................................................11, 14

28 U.S.C. § 2675.................................................................................12

28 U.S.C. § 2679.................................................................................38

Md. Code, Cts. & Jud. Pro. § 3-2A-02......................................................13

Md. Code, Cts. & Jud. Pro. § 3-2A-04................................................24, 29

Md. Code, Cts. & Jud. Pro. § 3-2A-05.....................................................29

Md. Code, Cts. & Jud. Pro. § 3-2A-06B...............................................8, 24

Md. Code, Cts. & Jud. Pro. § 5-109(d) ............................ 9, 14, 17, 23, 28

Md. Code, Cts. & Jud. Pro. § 5-201.........................................................35

## **Other**

Black's Law Dictionary (10th ed. 2014)...................................................30

## **JURISDICTIONAL STATEMENT**

This appeal is taken from judgment entered on a motion to dismiss. Jurisdiction in the District Court existed under 28 U.S.C. §§ 1346(b) and 2671 given that the claim involves allegations of negligence perpetrated by agents of the Federal Government. On May 25, 2017, Appellants noted a timely appeal from that Court's entry of final judgment, which disposed of all of Appellants' claims. This Court accordingly has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

I.    Did the three-judge panel that decided that only a complaint filed in U.S. District Court begins "action" in an FTCA lawsuit properly apply the principle that the Government is liable in tort in the same manner and to the same extent as private actors when it failed to recognize or apply Maryland Code, Cts. & Jud. Pro. § 5-109(d), which expressly provides that filing an action in Maryland's HCADRO is the "filing of an action?"

II.   Did the *Raplee* Panel establish a procedural requirement that violates Maryland law and requires premature, defective federal lawsuits?

III.  Did the *Raplee* Panel correctly conclude that only the filing of a civil action in U.S. District Court begins "action" under 28 U.S.C. § 2401(b)?

IV.   In light of the Supreme Court's recognition of equitable tolling in FTCA cases in *U.S. v. Wong,* and the fact that tolling for minors and mentally incompetent individuals is a Constitutional right under Maryland law, must not FTCA cases brought by such individuals be tolled during their period of disability?

## STATEMENT OF THE CASE

This is an action for medical negligence against agents of the Federal Government working for the Walter Reed National Military Medical Center. Appellants, Mercy and Ian Dews, allege that Walter Reed health care providers failed to act in accordance with the standard of care in the delivery of their infant son, J. Dews, on October 23, 2012, causing J. to be born with a permanent brain injury.

Pursuant to the Federal Tort Claims Act (FTCA), Appellants filed an administrative claim with the Department of the Navy within two years of J.'s birth, on October 2, 2014. The Government denied that claim on April 20, 2016. Appellants filed a lawsuit within six months thereafter, on October 5, 2016, in the Maryland Health Claims Alternative Dispute Resolution Office, as required by Maryland law and the FTCA. Appellants promptly complied with conditions precedent required by Maryland law, and thereafter filed suit in the U.S. District Court on December 13, 2016.

The Government moved to dismiss Appellants' lawsuit as untimely, citing the very recent decision of a three-judge panel of this Court in *Raplee v. U.S.,* 842 F.3d 328 (4th Cir. 2016). The District

Court granted the motion on April 24, 2017. This timely appeal followed.

## STATEMENT OF THE FACTS

### The Underlying Facts

At 8:03 in the morning on Tuesday, October 23, 2012, Mercy Dews reported to the Obstetrical Clinic at the Walter Reed National Military Medical Center for a scheduled appointment.[1] She was 40 weeks and 5 days pregnant. Mrs. Dews reported that she was experiencing 7/10 pain the lower pelvic region, and decreased fetal movement that morning.

The nurses assessed the baby's heart rate by Doppler and noted it to be 107-110, compared to its baseline of 135-140. Mrs. Dews was instructed to report upstairs to the Mother-Infant Care Center (MICC, equivalent to a Labor and Delivery department) for a labor evaluation due to the baby's low heart rate. No physician was notified.

Mrs. Dews and her baby were not put on an electronic fetal heart monitor in the MICC until 8:58 a.m. The fetal heart tracing

---

[1] The facts in this Section are taken from the Statement of Claim filed in the Maryland HCADRO, located in the Joint Appendix at pages 39-42.

immediately revealed signs of fetal distress, including a low heart rate, minimal variability of the fetal heart rate, no accelerations, and late decelerations – all ominous findings that demonstrated that the baby was in distress, and that mandated emergent delivery as soon as possible so as to spare the unborn baby from permanent brain damage.

Despite the ominous fetal heart tracing, the nurses did not contact a physician who could have delivered Mrs. Dews by cesarean section. Instead, they waited, and by 9:10 a.m., the baby's heart rate had fallen to the 90's.

At 9:15 a.m., the nurses and a midwife made a decision to admit Mrs. Dews for delivery, but did not contact a physician to consider cesarean delivery until sometime after 9:24 a.m.

The first time Mrs. Dews was evaluated by a physician for the possibility of cesarean delivery was at 9:30 a.m., almost 90 minutes after her arrival.  That doctor, Dr. Fischer, applied an ultrasound to Mrs. Dews abdomen and noted that the fetal heart rate was in the 80's. Dr. Fischer immediately made a decision to take Mrs. Dews to the operating room for an emergency cesarean section.

A baby boy, J. Dews, was finally born at 9:46 a.m.  At the time of birth, he was in severe distress and was almost dead.  He had no heart rate and was not breathing on his own.  He was stained with meconium, indicating fetal distress in utero.  He was intubated and chest compressions began at 30 seconds of life.  His Apgar scores, designed to measure the well-being of a newborn, were 0 at 1 minute of life and 1 at 5 minutes of life.  His cord blood gas pH was 6.7 with a base excess of minus 15, indicating a severe metabolic acidosis caused by lack of oxygen.

J. was placed on whole body cooling at Walter Reed, where he remained for the first day of his life.  He began to have seizures at approximately 12 hours of life.  The next day, October 24, 2012, he was transported to Georgetown University Hospital, where he remained for approximately the next month.  At Georgetown, he was placed on ECMO (extracorporeal membrane oxygenation), a "heart-lung" machine designed to sustain life in those who cannot properly oxygenate on their own.  He was diagnosed with hypoxic ischemic encephalopathy, commonly known as intrapartum asphyxia, which is a severe brain injury caused by lack of oxygen in utero.

On November 28, 2012, J. Dews was discharged from Georgetown to Frederick Memorial Hospital to be closer to home. At the time of transfer, his diagnoses included gastritis, poor feeding, bloody stools, bilateral pneumothoraces, persistent pulmonary hypertension, atrial septal defect, hypotension, septal hypertrophy, seizures, anemia, sepsis, thrombocytopenia, coagulopathy, hematuria, subcutaneous fat necrosis, hypoglycemia, hypokalemia, hyponatremia, hypomagnesemia, narcotic drug withdrawal symptoms, and other conditions.

Since his birth, J. has experienced significant cognitive, physical, and behavioral delays, for which he has received, and will continue to receive, medical treatment and therapy. It is expected that he may never be able to live independently.

## **Procedural History**

Appellants' claim was initiated by the filing of an administrative claim with the Department of the Navy on October 2, 2014. Joint Appendix (JA) 22-28. A year and a half later, on April 20, 2016, the Government mailed a notice of denial of Appellants' claim. JA 30.

Within six months of mailing of the Government's notice of denial, Appellants began their court action on October 5, 2016 by filing a

lawsuit in the Health Claims Alternative Dispute Resolution Office (HCADRO) of Maryland, as is required in both federal diversity and FTCA cases. JA 34-44. After Appellants promptly met the mandatory conditions precedent required in HCADRO, that Office issued an Order of Transfer on October 24, 2016, permitting Appellants to file suit in federal district court. JA 49. Appellants did so in a timely fashion in accordance with Maryland law on December 13, 2016.[2]  JA 1.

On February 10, 2017, the Government filed a motion to dismiss, arguing that, pursuant to this Court's very recent decision in *Raplee v. U.S.,* 842 F.3d 328 (4th Cir. 2016) (decided *after* J. Dews' HCADRO filing), Appellants' suit was not timely filed because, although the HCADRO action was filed within six months of the Government's denial, the complaint in U.S. District Court was not.[3]  JA 6. Appellants opposed the motion, but the District Court granted it on April 24, 2017.

---

[2] Maryland law requires a lawsuit to be filed in state or federal court within 60 days of receiving the Order of Transfer from HCADRO. *See* Md. Code, Cts. & Jud. Pro. § 3-2A-06B(f).

[3] Appellants in *Raplee* have filed a Petition for Certiorari with the United States Supreme Court, which has been docketed as No. 16-1272, and which is scheduled for Conference on June 15, 2017. If the Supreme Court grants the Petition, this Court should stay the instant appeal until the Supreme Court issues a decision.

JA 96-97.  Appellants noted an appeal.  JA 99.

## SUMMARY OF THE ARGUMENT

28 U.S.C. § 2401(b) states that a tort claim against the United States shall be barred unless "action is begun" within six months of the Government's denial of the plaintiff's administrative claim.  Although a three-judge panel of this Court in *Raplee v. U.S.,* 842 F.3d 328 (4th Cir. 2016) recently held that Maryland plaintiffs who file malpractice lawsuits in Maryland's HCADRO – as they <u>must</u> under both Maryland law and the FTCA – have not "begun action" when they do so, the decision in that case violates Maryland law, was wrongly decided, and must be reversed.

First, the *Raplee* panel failed to employ the principle that, in determining whether and to what extent the Government should be held liable in tort, it must apply Maryland law as a whole.  The panel did not acknowledge or address that beginning a malpractice action in Maryland's HCADRO explicitly is "deemed to be the filing of an action" under Maryland law.  Md. Code, Cts. & Jud. Pro. § 5-109(d).  This tenant of Maryland law, which this Court has previously held "**<u>must be honored</u>**" by federal courts, was not acknowledged in *Raplee,* let alone

applied.

Second, although the *Raplee* panel recognized that the mandatory conditions precedent required of malpractice cases under Maryland law and in FTCA cases brought in Maryland could take more than six months to complete, to solve this problem, the panel set up a paradoxical procedural mechanism that violates Maryland law, inasmuch as it requires litigants to file premature federal lawsuits before meeting mandatory conditions precedent.

Third, to reach its conclusion that the definition of "begin action" means only filing a complaint in the U.S. District Court, the three-judge panel engrafted language onto § 2401(b) that simply is not there. Furthermore, the panel failed to explain why filing a lawsuit in HCADRO – which the District Court for the District of Maryland has recognized to be a "court" – is not, and cannot be, "beginning action" for purposes of § 2401(b).

Finally, regardless of whether this Court revisits the decision of the panel that decided *Raplee*, the recent holding of *United States v. Wong,* 135 S. Ct. 1625 (2015), mandates that a rebuttable presumption of equitable tolling of the statute of limitations be applied in an FTCA

case.  Two of the oldest applications of the doctrine of equitable tolling are for plaintiffs who are minors and plaintiffs who are cognitively disabled, both of whom are legally incapable of bringing a tort action. Indeed, tolling for minors is a constitutionally protected right under Maryland law.  J. Dews has both disabilities, and the statute of limitations in his case must be equitably tolled as a result.

## ARGUMENT

### I.   LEGAL BACKGROUND

#### A.   Prosecution of FTCA Claims

The Federal Tort Claims Act waives the sovereign immunity of the United States for torts committed by federal employees acting in the scope of their employment.  It holds the Government accountable "in the same manner and to the same extent as a private individual under like circumstances[,]" 28 U.S.C. § 2674, and imposes liability "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  In interpreting these provisions, the Supreme Court has held that, "to treat the United States as an individual would be treated under like circumstances," it is necessary to

11

apply "the **whole law** of the State where the act or omission occurred." *Richards v. U.S.,* 369 U.S. 1, 11-12, 82 S. Ct. 585, 592 (1962) (emphasis added).

The FTCA has a built-in statute of limitations. The plaintiff must file an administrative claim with the appropriate Government agency within two years after her claim accrues. 28 U.S.C. § 2401(b). If the Government does not deny the administrative claim after six months, the plaintiff may "deem" the claim denied and file a lawsuit in the appropriate court, *see* 28 U.S.C. § 2675(a), or, the plaintiff may choose to wait, indefinitely, until the Government actually denies the claim. *See McAllister v. U.S.,* 925 F.2d 841, 843 (5th Cir. 1991); *Parker v. U.S.*, 935 F.2d 176, 178 (9th Cir. 1991).

If a plaintiff waits for the government denial, § 2401(b) requires the plaintiff to "begin action" within six months of the date the denial is mailed. It provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless **action is begun** within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. (Emphasis added.)

### B.    FTCA Malpractice Cases Arising in Maryland

The Maryland Health Care Malpractice Claims Act ("Health Claims Act") requires a plaintiff in a medical malpractice action to **<u>first</u>** bring her lawsuit against a health care provider in the Health Care Alternative Dispute Resolution Office of Maryland (HCADRO). *See* Md. Code, Cts. & Jud. Pro. (CJP) § 3-2A-02(a)(2) (a case against a health care provider for medical injury "may not be brought or pursued in any court of this State except in accordance with this" statute). If the plaintiff does not file in HCADRO and instead files in court, her case will be dismissed for failure to satisfy a mandatory condition precedent. *See id. See also Carroll v. Konits,* 929 A.2d 19 (Md. 2007).

A plaintiff ultimately may choose to proceed with the legal process outlined in the Health Claims Act, or may waive the jurisdiction of HCADRO **<u>after</u>** meeting several prerequisites, such as filing a "certificate of merit" signed by a qualified expert witness. If the plaintiff chooses to adjudicate fully her dispute in a judicial proceeding before HCADRO (including awarding damages), that process always exceeds six months in length.

Notwithstanding the fact that the Health Claims Act and its provisions are indigenous only to claims arising in Maryland, and are in no way mentioned in the FTCA, this Court and the District Court for the District of Maryland have adopted its requirements in federal diversity actions **and** in FTCA cases. *See Davidson v. Sinai Hosp.,* 617 F.2d 361 (4th Cir. 1980); *Raplee,* 842 F.3d at 331. This Court has explained that the requirements of the Health Claims Act must be met in FTCA cases because "the substantive law of the state where the tort occurred determines the liability of the United States."[4] *Raplee,* 842 F.3d at 331.

If a person wishes to hold a health care provider liable in Maryland, the mandatory commencement of an action in HCADRO stops the running of limitations. *See* CJP § 5-109(d) (stating that a filing in HCADRO "shall be deemed the filing of **an action**" for purposes of limitations) (emphasis added). *See also Swam v. Upper*

---

[4] In the past, when litigants have argued that compliance with the Health Claims Act is not required in cases arising under the FTCA, their arguments have been rejected on the theory that the Government is liable "in the same manner and to the same extent as a private individual under like circumstances." *See Zander,* 843 F. Supp. 2d 598, 606 (D. Md. 2012) (quoting 28 U.S.C. § 2674); *Anderson v. U.S.,* Civ. Action No. CCB-08-03, 2008 WL 3307137 (D. Md. Aug. 8, 2008).

14

*Chesapeake Med. Ctr.,* 919 A.2d 33 (Md. 2007). This Court has expressly embraced this principle in federal diversity actions, saying that "the statutory provision that filing the arbitration claim tolls the applicable Maryland statute of limitations **must be honored by federal courts** under the settled principle that such state tolling provisions are effectively substantive[.]" *Rowland v. Patterson,* 882 F.2d 97, 99 (4th Cir. 1989) (citing *Walker v. Armco Steel Corp.,* 446 U.S. 740, 750-51, 100 S. Ct. 1978 (1980)) (emphasis added).

## II.    *RAPLEE* WAS WRONGLY DECIDED AND IS BAD LAW

The District Court held that its decision was "governed by" the opinion of a three-judge panel of this Court in *Raplee v. U.S.,* 842 F.3d 328 (4th Cir. 2016). In *Raplee,* a case of first impression that was decided on November 22, 2016 (*after* the six-month period at issue in this case), the panel held that, although filing in Maryland's HCADRO is required in FTCA malpractice cases in Maryland, only a filing in the U.S. District Court meets the requirements of "beginning action" under § 2401(b).[5] Appellants do not dispute that the District Court was bound

---

[5] The District Court in this case did not agree that *Raplee* was a case of first impression. *See* JA 97 ("the law in this district was clearly

by the opinion in *Raplee,* but vigorously submit that the *Raplee* holding

violates Maryland law, is legally incorrect, and should be reversed.

---

that an action must be filed in this court within the six month limitation period prior to the Fourth Circuit's decision in *Raplee*").

This is simply not so. The trial judge who initially decided *Raplee* stated that the question of whether a filing in HCADRO constitutes "beginning action" under § 2401(b) was **a matter of first impression**. *See* JA 102 (Docket entry No. 12 in Civ. Action No. PWG-13-1318 (December 23, 2013) ("The facts of this case appear to present an issue of first impression in this district.")). Indeed, the panel of this Court that issued the *Raplee* opinion did not cite to any prior case law in support of its decision.

Furthermore, in erroneously stating that the law "clearly" was established prior to *Raplee*, the District Court cited to three unreported decisions, one of which was the unreported opinion of a panel of this Court in *Lucas v. U.S.,* Civ Action No. 16-1539, 2016 WL 6871912 (4th Cir. Nov. 22, 2016), issued the same day as *Raplee*, and also *after* the six-month period at issue in this case. The other two decisions cited by the court also were unreported; one of them was simply a letter order that is not even available on legal databases such as Westlaw.

It simply unfair to hold Appellants accountable to "clearly" established law on the basis of unreported and letter order decisions that are not publicly available. There was no way for Appellants to know that the *Raplee* holding was the law of this Circuit until that decision was issued, *i.e., after* Appellants' time period for filing suit in the District Court had already allegedly expired.

**A.   The *Raplee* Panel Disregarded The Principle That The Federal Government Is Liable In The Same Manner And To The Same Extent As A Private Individual When It Failed To Recognize That, Under Maryland Law, Filing In HCADRO Constitutes "Filing An Action" In A Malpractice Case**

The first manner in which the *Raplee* panel went astray is in failing to apply the well-established mandate of the FTCA that, in determining when the Government is liable "in the same manner and to the same extent as a private individual under like circumstances[,]" it is necessary to apply "the **whole law** of the State where the act or omission occurred." *Richards,* 369 U.S. at 11-12, 82 S. Ct. at 592. Specifically, the panel completely ignored that Maryland law expressly provides that filing a lawsuit in HCADRO <u>is</u> the "filing of an action" in a malpractice case, and stops the running of limitations. *See* CJP § 5-109(d) (stating that a filing in HCADRO "shall be deemed the filing of an action" for purposes of limitations). In fact, the *Raplee* panel failed to even *mention* CJP § 5-109(d) in its opinion, let alone explain why it would not apply in a Maryland FTCA case.

The fact that filing in HCADRO constitutes the "filing of an action" that stops limitations is substantive law that this Court has previously acknowledged <u>must</u> be honored by federal courts: "the

17

statutory provision that filing the arbitration claim tolls the applicable Maryland statute of limitations **must be honored by federal courts** under the settled principle that such state tolling provisions are effectively substantive[.]" *Rowland,* 882 F.2d at 99. Although that statement was made in a diversity case, there is no practical difference in a case brought under the FTCA, because state substantive law determines whether and to what extent the Government is liable in a tort claim case.[6]

---

[6] To hold that "beginning" an action in a diversity case is initiated by a different filing than in an FTCA case is not only incongruous and nonsensical, but it is also a trap for litigants this Court should not condone. The Supreme Court and federal appellate courts have repeatedly acknowledged that the requirements of the FTCA must be interpreted in a fair manner so as not to preclude valid claims from proceeding on the merits due to mere technicalities. For example, while acknowledging that its provisions must be strictly construed, the First Circuit has explained that the 1966 amendments to the FTCA "were designed in part to provide a more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government," and were "not intended to put up a barrier of technicalities to defeat their claims." *Lopez v. United States,* 758 F.2d 806, 808 (1st Cir. 1985) (citations omitted). District Courts have likewise noted that it was never "Congress' intent to permit every nuance or permit technical varieties … to frustrate the purpose of the notice requirement[s]" of the FTCA. *Munger v. United States,* 116 F. Supp. 2d 672, 676 (D. Md. 2000). *See also Marricone v. United States,* 697 F. Supp. 874, 879 (E.D. Pa. 1988) (same). The FTCA "was never intended as a trap for the unwary claimant." *Id.* (Citations omitted.) (Continued on next page…)

That state law must be applied as a whole. Either all of the requirements of the Health Claims Act apply, or none of them do. Stated another way, either an FTCA plaintiff is *not* required to file in HCADRO, and therefore "action is begun" merely by the filing of a complaint in district court, *or*, if filing in HCADRO is federally required, then "action is begun" when *that* filing occurs because that is what Maryland law expressly provides. Because the federal courts have always held that compliance with the Act is required, those holdings must be taken to mean that <u>all</u> of its provisions apply, including its provision that filing in HCADRO "shall be deemed the filing of an action."[7]

---

A holding that filing a lawsuit in HCADRO tolls limitations in a diversity case under *Rowland v. Patterson*, but does not in an FTCA case under *Raplee*, is exactly such a trap.

[7] This result is also required under the recently-decided seminal Supreme Court decision in *U.S. v. Wong,* 135 S. Ct. 1625 (2015), discussed further *infra,* that the limitations scheme established in § 2401(b) is a "nonjurisdictional," "ordinary, run-of-the mill statute of limitations" that is subject to principles of equity. *Id.*

If § 2401(b) is an "ordinary, run-of-the-mill" statute of limitations, then a state <u>substantive</u> law that "deem[s] the filing of an action" to have occurred at a specific point in time (such as CJP § 5-109(d)) "must be honored" by federal courts, regardless of how the court acquired jurisdiction. *Rowland,* 882 F.2d at 99.

The result reached in *Raplee* picks and chooses which portions of the Health Claims Act are required in FTCA cases – and does so without providing any notice to litigants regarding which requirements are mandatory and which are not. Under its holding, apparently, a plaintiff *must* file in HCADRO and obtain a certificate of merit from a qualified expert, but the option to remain in HCADRO and arbitrate the claim is precluded. In other words, the plaintiff is deprived of the option to arbitrate the case, and <u>must</u> elect to waive to federal court.

Adopting the Health Claims Act provisions requiring filing in HCADRO with a certificate of merit <u>without</u> also adopting the tolling provision of § 5-109(d) effectively deprives a plaintiff in an FCTA case of the benefit of the Act. Any arbitration conducted pursuant to the Act is bound to take more than six months. Defendants must answer, written discovery must be filed, depositions must be taken, a panel chairman must be chosen, and an arbitration must be conducted. How can the law require this procedure as a condition precedent to an FTCA claim if the plaintiff in that claim, as a result of the six-month limitation, cannot possibly complete an arbitration?

The injustice of this result has been recognized by the U.S. District Court for the District of Maryland in another FTCA case in which the Government argued that the plaintiffs' medical malpractice claim should be dismissed. In that case, although the plaintiffs' action in HCADRO was filed in a timely fashion, their filing in federal court was more than three years after the death of the decedent. The Government argued that this filing violated the substantive Maryland "statute of repose" contained in CJP § 3-904(g), which requires wrongful death claims to be brought within three years of the date of death. *See Goodie v. United States*, No. RDB-10-3478, 2013 WL 968198, (D. Md. Mar. 12, 2013). The District Court judge rejected the Government's argument, pointing out that, under Maryland law, the date of filing in HCADRO "is considered the date of filing for limitations purposes." *Id.* at * 18.

The Court also concluded that interpreting the law in the manner suggested by the Government "would lead to absurd results." *Id.* at *19. To explain, he posed a hypothetical that is directly applicable here:

> To illustrate this point, consider a plaintiff who intends to file a medical malpractice action, including both negligence and wrongful death claims, against his health care provider. Under

Maryland law, this plaintiff must first submit his claims to the Health Care Alternative Dispute Resolution Office. Because he ultimately wishes to file suit in federal court, he must abide by the time limitation for waiving Maryland's arbitration process. Assuming that section 5–109(d)'s filing rule did not apply to the statute of repose in section 3–904(g), then this plaintiff, awaiting the appropriate time to waive the arbitration remedy, might be forced to preemptively file suit under the wrongful death statute to ensure that those claims are timely filed. Because his malpractice action would still be subject to arbitration, it would be improper to file suit in federal court—his state arbitration remedy would not yet be exhausted. Yet section 3–904(g)'s statute of repose would compel the plaintiff to file a complaint alleging at least the wrongful death claims.

This hypothetical plaintiff is stuck between a rock and a hard place. If he chooses to abide by Maryland's Health Care Malpractice Claims Act, he risks surrendering his wrongful death claims if a delay in the arbitration process prevents timely filing. If he decides to file suit to preserve his wrongful death claims, then he risks dismissal for failure to exhaust Maryland's arbitration remedy. This Court is hard-pressed to comprehend the rationale of such a statutory scheme. Moreover, the scheme would encourage some plaintiffs to file suit prematurely, undercutting the principal purpose of Maryland's Health Care Malpractice Claims Act, which is "to dispose of a majority of medical malpractice cases in the arbitration system and minimize the number of cases brought to trial in the traditional tort system."

*Id.* at *19 (citations omitted).

The same absurd result obtains under the tortuous reasoning of the *Raplee* panel. If that decision stands, then plaintiffs in FTCA cases sounding in medical negligence will also be stuck between a rock and a hard place, having to comply with all of the requirements of the Health Claims Act within a six-month period, some portion of which is completely out of their control. The only sensible and just result that avoids these practical problems is to recognize that CJP § 5-109(d) applies in FTCA cases, and therefore a filing in HCADRO, which is deemed to be "filing an action" under Maryland law, also qualifies as "action begun" under § 2401(b).

**B.     Although Recognizing That Its Holding Was Practically Unfeasible, The Panel Established An Untenable "Solution" To This Problem That Violates Maryland Law And Requires Premature, Defective Federal Lawsuits**

To be sure, the *Raplee* panel *did* recognize that it may be impossible for litigants to comply with the mandatory requirements of the Health Claims Act **and** at the same time file a complaint in the U.S.

District Court all within six months.[8]  *See* 842 F.3d 335.  The "solution" the panel suggested for this problem, however – filing a lawsuit in federal court *before* meeting the mandatory requirements of HCADRO and requesting a stay of those federal proceedings while taking steps to meet the requirements of Maryland law – categorically violates Maryland law and requires premature, defective filings in federal court.

_____

[8] A Maryland plaintiff in a malpractice case must first file a lawsuit in HCADRO, and then, within 90 days thereafter (a period which *must* be extended for another 90 days upon request), file a "certificate of merit" signed by a qualified expert witness.  CJP § 3-2A-04.  In cases in which the medical records are unclear or incomplete, deposition testimony is often required in order to obtain a certificate that meets the requirements of the law, namely, that sets forth what the standard of care is and how it was breached.

After the certificate of merit is filed, the plaintiff *may* then file an "election to waive" arbitration and proceed to the appropriate state or federal court.  CJP § 3-2A-06B.  Once the election to waive is filed, the Director of HCADRO must – on his own schedule and under no deadline imposed by statute – issue a "transfer order" permitting the action to be filed in court.  *Id.*

Given these requirements, even assuming a plaintiff acted extremely expeditiously after the Government's final denial was mailed to gather medical records, consult with an expert, obtain a signed, appropriate certificate of merit, and file an election to waive arbitration, she *still* likely would be in a position where – by no fault of her own – she could not file her claim in U.S. District Court within the six-month period set forth in § 2401(b).

Maryland law is unequivocal in its insistence that filing in HCADRO is a "**condition precedent**" to maintaining a malpractice case. In *Carroll v. Konits,* 929 A.2d 19, 27 (Md. 2007), the Maryland Court of Appeals pointed out how "[m]any of [its] cases have recognized that **the *arbitration process,* as a whole, was designed to be a condition precedent** to the filing of a claim in circuit court." (Italics original; bold and underline added) (citing cases, including *Crawford v. Leahy,* 604 A.2d 73, 75 (Md. 1992) ("The mandatory arbitration requirement … creates a condition precedent to the institution of a court action. Upon fulfillment of the condition precedent, malpractice claims may be heard in court.")). By definition, therefore, complying with the requirements of HCADRO **must be done first**, *i.e.,* before a case is filed in state or federal court.

If future litigants follow the procedure outlined by the *Raplee* panel (which they must or risk liability for legal malpractice), they will undoubtedly be filing premature, defective federal lawsuits that risk dismissal for failure to meet mandatory conditions precedent. In fact, the Government previously has moved to dismiss FTCA suits in which

the plaintiffs did *not* first meet the requirements of the Health Claims Act. *See, e.g. Zander,* 843 F. Supp. at 606; *Anderson,* 2008 WL 3307137.

At least one U.S. District Court judge previously acknowledged this to be true. In the *Goodie* case discussed above, Judge Richard Bennett recognized that "it would be **<u>improper</u>** to file suit in federal court" before the state arbitration process was concluded, and that doing so would subject the plaintiff to the risk that her case would be dismissed "for failure to exhaust Maryland's arbitration remedy." 2013 WL 968198 at *19 (emphasis added). This analysis is absolutely correct.

Additionally, although the *Raplee* panel cited to the unpublished decision of another District Court judge as an example of using a stay as a "procedural device," to meet the requirements of the FTCA, the judge in that case *sua sponte* used her discretion to stay the action to allow the plaintiffs to comply with the requirements of the Health Claims Act because she recognized that the case presented a matter of first impression, and that dismissal would be a harsh result. *See Anderson,* 2008 WL 3307137 at *4 ("Given the circumstances of this case and the closeness of the question … the case will be stayed rather

than dismissed while the plaintiff satisfies the conditions of the Act, in order to avoid creating any statute of limitations bar."). No law <u>requires</u> a District Court judge to issue a stay, so there is no guarantee that a stay would be allowed in every case – and the panel in *Raplee* did not require it.

The *Raplee* panel essentially re-wrote Maryland law when it determined that filing in HCADRO does not constitute "action" under § 2401(b) and that litigants must therefore file federal lawsuits before meeting the mandatory conditions precedent required under Maryland law. Its reasoning is nonsensical and must be revisited.

### C. The Panel Altered The Plain Language Of § 2401(b) And Did Not Explain Why Filing In HCADRO Is Not Beginning Action Under The FTCA When It Expressly <u>Is</u> Under Maryland Law

Finally, the three-judge panel in *Raplee* altered the plain language of § 2401(b) and failed to explain why filing in HCADRO is not "beginning action" under the FTCA, when it expressly *is* under Maryland law.

The panel determined that the question before it was "when <u>an</u> 'action is begun' under § 2401(b)," focusing its answer on what <u>legal pleading</u> needed to be filed, and <u>where</u> that pleading needed to be filed,

before the expiration of six months. Relying on a Black's Law Dictionary definition of "action" as "a lawsuit," it held that only a "federal civil action" filed in a U.S. District Court qualifies as the filing of "<u>an</u> action" under § 2401(b). *Id.* at 332-33.

Framing the question in this manner, however, inserted the word "an" into statute where that word simply does not appear. The plain language of § 2401(b) does not say that the only way to comply with the six-month time limit is by filing <u>any</u> specific document or pleading, let alone filing <u>only</u> a complaint in the U.S. District Court. The statute merely requires that "action is begun" within six months.

In this case, "action" absolutely was "begun" within six months of April 20, 2016 when Appellants – as they were indisputably required to do in an FTCA suit arising in Maryland – filed an action with HCADRO on October 5, 2016. Because this Court has adopted the Health Claims Act requirements in a Maryland FTCA case, it makes absolutely no sense to hold that filing a lawsuit in HCADRO is not "beginning" "action" under § 2401(b), especially when, as discussed above, filing such an action is expressly recognized under Maryland law to be "deemed the filing of an action." CJP § 5-109(d).

Further, nowhere in the panel's opinion did it discuss or explain why a filing in HCADRO did not, could not, or should not constitute "action" under § 2401(b). Although not titled a "court," HCADRO is a judicial agency. The law that establishes its existence is contained in the Courts and Judicial Proceedings Article of the Maryland Code. *See* CJP § 3-2A-01 *et seq.* A plaintiff in a malpractice suit in Maryland must file first in HCADRO, and if he or she does not, the case is dismissed for failure to comply with a mandatory condition precedent. CJP § 3-2A-04(a); *Carroll*, 929 A.2d at 27. The nature of HCADRO is that of judicial body. If the plaintiff chooses to stay in HCADRO rather than waive its jurisdiction and proceed in court, the claim is adjudicated after an adversarial process that provides for written discovery, depositions, motions practice, and an eventual evidentiary proceeding in which witnesses are called and cross-examined. CJP § 3-2A-05. The Maryland Rules of Procedure are applied. *See id.* If the plaintiff is successful, damages are awarded. *See id.*

In fact, the Government has argued – successfully – that HCADRO is a "State court" for purposes of whether a claim filed in

HCADRO is removable to federal court under 28 U.S.C. § 1446.[9]  *See Wilson v. Gottlieb,* 821 F. Supp. 2d 778, 791 (D. Md. 2011) (holding that "HCADRO qualifies as a 'State court' for purposes of 28 U.S.C. § 1442" because, among other reasons, it is "authorized to hold evidentiary hearings, subpoena witnesses, and take testimony under oath in an adversarial proceeding.").

Given this Court's adoption and application of the Health Claims Act to FTCA cases, the fact that filing in HCADRO constitutes "filing an action" that tolls limitations under substantive Maryland law, the recognition by the District Court for the District of Maryland that HCADRO constitutes a "state Court," and the judicial nature of

---

[9] The *Raplee* panel relied heavily on the Black's Law Dictionary definition of "action" as being "the legal and formal demand of one's right … in a court of justice." 842 F.3d at 332.  Ignoring that that definition is not the first one listed (the first one is "the process of doing something; conduct or behavior," *see* <u>Black's Law Dictionary</u>, 10th ed. 2014), making a "legal and formal demand of one's right" is **precisely** what a plaintiff does when she files a malpractice suit in HCADRO.  In fact, the fourth definition of "action" in <u>Black's</u> is "a civil or criminal judicial proceeding," including "any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree."  In short, nowhere does <u>Black's</u> suggest that the word "action" means only federal filing of a lawsuit. The *Raplee* Court engrafted those words onto § 2401(b), and completely failed to articulate why filing in HCADRO does not meet the definition of "action."

proceedings in that body, it simply **<u>must</u>** be that "action is begun" by the filing of a lawsuit in HCADRO under § 2401(b).

## III.   Equitable Tolling Applies to J. Dews' FTCA Claim

The District Court completely failed to consider, acknowledge or rule on Appellants' argument that, under the recent holding of the Supreme Court in *U.S. v. Wong*, 135 S. Ct. 1625 (2015), the limitations period applicable to J. Dews' FTCA suit was equitably tolled because he is a brain-injured minor.[10]   JA 97.   This substantive provision of Maryland law – recognized as a constitutional guarantee by the Maryland Declaration of Rights – must be applied in FTCA cases in order to give effect to the principle that the Government is liable to the same extent as a private citizen.

---

[10] The only comment the Court made in its Memorandum Opinion is that equitable tolling does not apply here because it was already "clearly" established that filing in HCADRO is not "beginning action" under § 2401(b).   JA 99.   In point of fact, that law was *not* clearly established, for the reasons stated previously.   *See note 5 supra.*

The Court did not even acknowledge or mention Appellants' argument that J. Dews' suit is subject to equitable tolling because he is a minor.

## A.  Equitable Tolling Is Available Under The FTCA

Before 2015, a number of federal courts had determined that the 500-year-old legal principle that statutes of limitations are tolled during infancy or periods of cognitive disability does <u>not</u> apply to cases brought under the FTCA.  Most of these courts reasoned that § 2401(b) is not a statute of limitations, but rather, is an "enabling" or "jurisdictional" statute that alone sets forth the applicable time requirements to sue the Government in tort.  *See, e.g., Simon v. U.S.,* 244 F.2d 703 (5th Cir. 1957) (holding that tolling for minors was not available in FTCA cases); *McCall ex rel. Estate of Bess v. U.S.,* 310 F.3d 984, 988 (7th Cir. 2002) (same, explaining that "because the FTCA waives the immunity of the United States and its statute of limitations is a condition of that waiver, courts should not extend the waiver beyond that which Congress intended").  Others concluded that knowledge of the child's injury was imputed to the parents, who have a legal duty to act on their child's behalf.  *See, e.g., Landreth by and through Ore v. U.S.,* 850 F.2d 532, 534 (9th Cir. 1988).

In 2015, the Supreme Court rejected the reasoning underlying most of these decisions.  In *U.S. v. Wong,* 135 S. Ct. 1625 (2015), two

FCTA plaintiffs had filed beyond the time requirements of § 2401(b) because they had not known of their claim within the applicable time period. They argued that, under the discovery rule (*i.e.,* lack of awareness of one's cause of action), limitations should be tolled. The Government retorted that equitable tolling does not apply to § 2401(b) because that statute is a "jurisdictional" time requirement that simply cannot be tolled.

The Court rejected the Government's position. It concluded that § 2401(b)'s time limitation scheme is a tollable, "nonjurisdictional" statute akin to ordinary statute of limitations, which are designed to establish "quintessential claims-processing rules" and "to promote the orderly process of litigation." *See id.* at 163-33; 1638 ("we hold that the FTCA's time bars are nonjurisdictional and subject to equitable tolling"). The Court remanded for the lower court to determine whether to apply equitable tolling to the facts of the cases before it.

### B. In Light Of *Wong,* Tolling For Minors And Mentally Disabled Plaintiffs – Which Is Part Of The Substantive Law Of Maryland Guaranteed Under Its Constitution – Must Be Recognized In FTCA Cases

In light of *Wong's* mandate that § 2401(b) is a tollable, non-jurisdictional, "run of the mill" limitations provision*,* it simply is no

longer accurate to say that substantive state law tolling provisions for minors and mentally disabled plaintiffs do not apply to FTCA cases. Such statutes are indisputably a part of state substantive law – in fact, in Maryland, tolling for such plaintiffs is a guaranteed Constitutional right.

This very Court has already recognized that state law may be engrafted onto the FTCA's limitations scheme if that state law is substantive. In *Anderson v. U.S.,* 669 F.3d 161 (4th Cir. 2011), it was asked to decide whether a Maryland statute setting forth time limitations applicable in medical malpractice cases was a "statute of repose" that would need to be engrafted onto the FTCA's time requirements as a part of substantive Maryland law. Recognizing that the FTCA permits suit against the Government to the same extent as private individuals would be under state substantive law, the Court reasoned that, even though "federal law defines the limitations period" for FTCA claims, "[s]tate law may nevertheless speak to the timeliness

of a claim brought under the FTCA" if that state law "creates a substantive right[.]"[11]  *Id.* at 164-65.

It is beyond dispute that Maryland's statutory tolling provision for minors and individuals with mental disabilities is a matter of substantive state law that is not only codified by statute, *see* Md. Code, CJP § 5-201, but also is also guaranteed by the Declaration of Rights in the Maryland Constitution.

In *Piselli v. 75th Street Medical,* 808 A.2d 508 (Md. 2002), the Court of Appeals of Maryland, in a case certified to it by this Court, determined that a statute that required minor plaintiffs to file medical malpractice actions before the age of majority violated the Maryland Declaration of Rights by denying the right to a remedy for injury to one's person or property, and the right of access to the courts.  The Court explained that tolling during the period of minority – a period of time during which children are under a legal disability and are "legally incapable of bringing a tort action" – was a principle that had existed in

_____

[11] Ultimately, this Court in Anderson decided to certify to the Maryland Court of Appeals the question of whether the statute at issue constituted a substantive statute of repose, or an "ordinary" statute of limitations.  The Court of Appeals determined that it was the latter. *See Anderson v. U.S.,* 46 A.3d 426 (Md. 2012).

the law of Maryland since its inception, and for over 500 years. *Id.* at 524. It advised this Court that in Maryland, statutes that infringed upon that principle constituted an unreasonable restriction on access to the courts, noting that similar rights were held by citizens of at least 39 other states. *Id.* at 517; 522-23.

Applying principles of equity, the *Piselli* Court explained that its result was necessary in the interest of "public policy and justice" in order to protect children whose parents may be "dilatory" and fail to sue on their behalf. Otherwise, the child would be "twice victimized – once at the hands of the tortfeasor, and once by parents who, for whatever reason, failed to timely prosecute the claims."[12] *Id.* at 524 (Quotation marks and citation omitted.)

This principle of tolling during the period of minority and mental disability must apply in an FTCA case in light of the Supreme Court's holding in *Wong* that § 2401(b) merely establishes a "run of the mill statute of limitations," and this Court's recognition that state laws that

---

[12] The policy behind this right is so strong in Maryland that the Maryland Legislature has extended the right to tolling during periods of minority and mental incompetence even to the "substantive" limitations period applicable in wrongful death claims. *See Parker v. Hamilton,* -- A.3d --, No. 78, Sept. Term 2016, 2017 WL 2226686 (May 22, 2017).

speak to the substantive rights of individuals are applicable in FTCA cases. *See Anderson, supra.* If, as this Court held in *Anderson,* a substantive state statute of repose that "speaks to timeliness" would need to be honored by federal courts when deciding whether an FTCA claim is timely, then so too must substantive state tolling provisions that have been recognized to be constitutional rights.

In fact, even before *Wong* was decided, the Third Circuit and one prescient District Court recognized this principle. In *Albright v. Keystone Rural Health Center,* 320 F. Supp. 2d 286 (M.D. Pa. 2004), which also involved allegations of injury to a minor child at birth, the plaintiff was not aware that the individuals who delivered her baby were agents of the Government, and accordingly failed to file an administrative claim with the appropriate federal agency within two years after her cause of action accrued. She argued that principles of equitable tolling should apply to her case, in particular because she was a minor at the time of her injury. *Id.* at 287.

The District Court undertook the same analysis that was eventually made by the Supreme Court in *Wong,* concluding that equitable tolling applies in FTCA cases. *See id.* at 289-90. It then

considered the question of whether the Pennsylvania statute that tolls limitations for minor tort plaintiffs could be applied to toll limitations under § 2401(b) of the FTCA. *See id.* at 290-91.

It held that equitable tolling for minors *should* apply in FCTA cases. It reasoned that the FTCA "should not in any way abrogate Pennsylvania's codified policy to protect the interests of its minors in pursuing civil claims," "and for basic reasons of fairness and equity," held that dismissal of the plaintiffs' case "would be ignoring Pennsylvania's valid interest in protecting minors." *Id.* at 291.

A few years later, the Third Circuit considered a case in which the plaintiff, a minor, filed a medical negligence action in Pennsylvania state court later than the two-year time limit Pennsylvania allows for such claims to be brought by adults. *See Santos ex rel Beato v. U.S.,* 559 F.3d 189 (3d Cir. 2009). According to the Third Circuit, the plaintiff "understandably believed" that the Pennsylvania statute providing for tolling during the period of minority applied to his claim. *Id.* at 203. The claim was removed to Federal Court pursuant to the Westfall Act, 28 U.S.C. § 2679, because the allegedly negligent employees were Government agents.

Although the Third Circuit ultimately concluded that limitations must be equitably tolled because the plaintiff had no way of knowing that the employees were agents of the Government, it commented in its opinion about the impending need to address whether the same principles of equity must apply to minors:

> [T]he Government is contending for a result likely to prejudice the weakest and most vulnerable members of our society who surely are compelled to rely on others for the assertion of their rights, particularly when she is of tender years as was Santos when her cause of action accrued. **There is no escape from the reality that the statute of limitations trap … is a perfect vehicle to ensnare children**. In this regard we pose the following rhetorical question: can any rational person believe that Santos, who was six years old when her claim accrued at that time had any personal knowledge of malpractice actions and the FTCA? … We believe in reaching our conclusion we are acting consistently with congressional intent, as we do not think that Congress in the circumstances here would want to bar Santos from an opportunity to present her claim.

*Id.* at 203-04 (emphasis added).

The time has come to answer the Third Circuit's rhetorical question. The Maryland Court of Appeals has expressly held that minors in this State are not bound by the knowledge and action (or

39

inaction) of their parents, and should not be held accountable if and when their parents sleep on their rights. The guarantee of the right to a remedy until the age of majority, or removal of disability, is a substantive part of Maryland law that should not, and cannot be, trampled on or pushed aside simply to effectuate the "orderly claims processing" goals of the FTCA's limitations scheme.

### C.    Appellants Pursued Their Rights Diligently

Finally, a part of every equitable tolling analysis involves whether the plaintiff diligently pursued his or her rights. *See, e.g., Santos,* 559 F.3d at 197; *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S. Ct. 453, 457-58 (1990). It strains credulity to assert that there was no such diligence in this case.

Appellants timely filed an administrative claim with the Department of the Navy. That Department waited over 18 months to deny the claim. Once the denial was received, Appellants promptly took action to obtain the necessary expert witnesses and certificates from those experts to meet the mandatory conditions precedent required under Maryland law. They filed their action in HCADRO within six months of the date the Government's denial was mailed. That filing

was diligent in light of the fact that this Court had not yet decided *Raplee,* and there was no other published law readily accessible to litigants or their counsel to put them on notice that such a filing would not constitute "beginning action" under § 2401(b). *See note 5 supra.* Once the conditions precedent were met in HCADRO, Appellants promptly filed their Election to Waive out of HCADRO, and, upon receiving the Order of Transfer from that Office, promptly filed their civil action in U.S. District Court.

There is no evidence in this case that the "claims processing" goals of § 2401(b) have been violated in this case. There has been no delay. There has been no sleeping on rights. There has been no lack of diligence. There has not been failure to provide timely notice to the Government of the nature and extent of the claims. There is no prejudice to the Government, nor will there be if this case is reversed and allowed to proceed on the merits.

That is what should happen. The decision of the District Court must be reversed.

## **CONCLUSION**

For all of these reasons, and those to be argued at Oral Argument, Appellants Mercy and Ian Dews request that this Court reverse the judgment of the District Court and remand for further proceedings.

_____
E. Dale Adkins, III
Emily C. Malarkey
BEKMAN, MARDER & ADKINS LLC
300 West Pratt Street, Suite 450
Baltimore, MD 21201
(410) 539-6633
*Attorneys for Appellants*

## **REQUEST FOR ORAL ARGUMENT**

Appellants hereby request oral argument pursuant to Local Rule 34(a).

_____
E. Dale Adkins, III
Emily C. Malarkey
BEKMAN, MARDER & ADKINS LLC
300 West Pratt Street, Suite 450
Baltimore, MD 21201
(410) 539-6633
*Attorneys for Appellants*

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1552

*Mercy Dews, et al.*

*v.*

*The United States of America*

## CERTIFICATE OF COMPLIANCE

1.     I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 8,736 (less than 14,000) words of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)B)(iii), as verified by Microsoft Word for Mac Version 15.33.

2.     I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 15.33 in size 14 Century Schoolbook font.

_____
E. Dale Adkins, III
Emily C. Malarkey
BEKMAN, MARDER & ADKINS LLC
300 West Pratt Street, Suite 450
Baltimore, MD 21201
(410) 539-6633
*Attorneys for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2017, I served

Appellants' Opening Brief upon the Appellees by electronic filing and by

mailing a copy, first class, postage pre-paid, to:


Evelyn Lombardo Cusson
U.S. Attorney's Office
District of Maryland
36 South Charles Street, Fourth Floor
Baltimore, MD 21201


_____
E. Dale Adkins, III
Emily C. Malarkey
BEKMAN, MARDER & ADKINS LLC
300 West Pratt Street, Suite 450
Baltimore, MD 21201
(410) 539-6633
*Attorneys for Appellants*